JUDGE DANIELS

07 CV 11077

545-07PJG/PLS
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Peter J. Gutowski (PG 2200)
Pamela L. Schultz (PS 8675)

RECEIVED
DEC 0 7 2007
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

COSMOTRADE EXPORT SA,

Plaintiff,

-against-

GABRO INTERNATIONAL AG,

Defendant.

-----------------------------------------------------------x

**07 Civ.**

**VERIFIED COMPLAINT**

Plaintiff, COSMOTRADE EXPORT SA (hereinafter "COSMOTRADE") for its Verified Complaint against Defendant GABRO INTERNATIONAL AG (hereinafter "GABRO"), alleges upon information and belief as follows:

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract of charter party. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333 and the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331.

2. At all times material hereto, Plaintiff COSMOTRADE was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address in Piraeus, Greece.

3. At all times relevant hereto, Defendant GABRO was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at Postrasse 18, CH-3600 Zug, Switzerland.

4. On or about August 24, 2006, Plaintiff COSMOTRADE, in the capacity as owner of the M/V CHANG LE MEN, entered into a maritime contract of charter party with Defendant GABRO, as charterer, for the carriage of a partial cargo of 3,500 hot rolled plates 5% more or less in Charters' option. A copy of the charter party is annexed as Exhibit A.

5. Plaintiff COSMOTRADE duly tendered the vessel into service under the charter, the voyage was performed and $30,000 remains due and owing to COSMOTRADE under the charter party.

6. In breach of the terms of the charter party, and despite due demand and otherwise agreeing the amount was due, GABRO has refused and/or otherwise failed to pay the amounts due and outstanding under the charter party, and the entire amount of $30,000 remains due and owing.

7. The charter party provides for the application of English law and all disputes between the parties are to be resolved by the arbitration in London, and COSMOTRADE specifically reserves its right to have this dispute resolved in London.

8. This action is brought to obtain jurisdiction over GABRO and to obtain security in favor of Plaintiff COSMOTRADE in respect to its claims against GABRO and in aid of London proceedings.

9. Under English law, costs including attorney fees, disbursements and interest are recoverable as part of Plaintiff's claim.

10. This action is further brought to obtain security for any additional sums to cover Plaintiff's anticipated attorney fees and costs in the London proceedings and interest, all of which are recoverable as part of Plaintiff's claim under English law.

11. Under English law, including but not limited to Section 63 of the English Arbitration Act of 1996, costs including attorney fees, arbitrators' fees, disbursements and interest are recoverable as part of COSMOTRADE's claim.

12. Plaintiff estimates, as nearly as can be computed, that the legal expenses and costs of prosecuting the claim in London will be $5,000 and interest on its damages are estimated to be $3,873.66 (calculated at the rate of 7% from the time payment was due for a period of one year, the estimated time for completion of the proceedings in London).

**Request for Rule B Relief**

13. Upon information and belief, and after investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant (collectively hereinafter, "ASSETS"), including but not limited to ASSETS in its name at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein.

14. The total amount to be attached pursuant to the calculations set forth above is $38,873.66.

WHEREFORE, Plaintiff COSMOTRADE EXPORT SA prays:

a. That process in due form of law according to the practice of this Court may issue against Defendant citing it to appear and answer the foregoing;

b. That if Defendant cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendant up to and including **$38,873.66** be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or being transferred from or for the benefit of Defendant (collectively hereinafter, "ASSETS"), including but not limited to such ASSETS as may be held, received, or transferred in its name or as may be held, received or transferred for its benefit, at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

c. That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including but not limited to the recognition and enforcement of any judgment entered against the Defendant in the London proceedings; and

d. For such other, further and different relief as this Court may deem just and proper in the premises.


Dated: New York, New York
December 6, 2007

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff

By: ______________________

Peter J. Gutowski (PG 2200)
Pamela L. Schultz (PS 8675)
80 Pine Street
New York, NY 10005
(212) 425-1900

**ATTORNEY VERIFICATION**

State of New York )
) ss.:
County of New York )

PETER J. GUTOWSKI, being duly sworn, deposes and says as follows:

1. I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

3. The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

Peter J. Gutowski

Sworn to before me this
6 day of December 2007

Notary Public

HAZEL S. ROSENTHAL
Notary Public, State of New York
No. 01RO4841178
Qualified in Queens County
Certified in New York County
Commission Expires Dec. 31, 2010

Adapted from C.(Ore) 7 Mediteranean IRON ORE

Original!

Stehn & Co.
Tel.: 514 77 - 7
Fax: 514 77 999
e-mail: stehnco-hamburg@shipnet.de
Brodersweg 3, 20148 Hamburg

# STEMMOR CHARTER PARTY(1983)

~~London~~, *Hamburg, 24th August, 2006* ~~19~~

1 IT IS THIS DAY MUTUALLY AGREED BETWEEN *COSMOTRADE EXPORT SA.*

of ... Owners of the M.V. *"CHANG LE MEN"* ... flag *St Vincent*

and *GABRO INTERNATIONAL AG* of *Zug, Switzerland* ... Charterers as follows:

**Vessel's condition and eligibility to trade**

1A Owners warrant that the vessel is tight, staunch and strong, in class, and in every way fitted for the voyage, with her hull, machinery and equipment in a thoroughly efficient state and with a full and efficient complement of Master, Officers and Crew, insofar as the foregoing conditions can be attained by the exercise of due diligence. Owners further warrant that the vessel is eligible for trading to the ports and places specified for the voyage and at all times shall have on board all certificates, records and other documents required for such trading.

**Vessel's description**

1B Owners guarantee vessel's description *See Clause 43* ~~Built~~ ... ~~LOA~~ ...

~~Beam~~ ... ~~DWAT~~ ... ~~on a summer salt water draft of~~ ...

~~Single~~ ... ~~deck~~

Tween - ...

... ~~holds all hold with/without raised tunnel shaft.~~

... hatches ~~sizes~~ ...

... ~~cranes/winches and derricks of~~ ... tons ~~lifting capacity each in single gear and suitable for working with married~~ folds.

Vessel is classed Lloyd's 100A1 or equivalent and Owners guarantee that such classification will be maintained during the entire duration of this Charter Party. Should this classification not be maintained during the specified period then Owners to be liable for any and all extra insurance penalties or assessments directly resulting from the fact that the vessel's guaranteed classification has not been maintained.

**Port of Loading**

2 This ship shall proceed with all convenient speed to *1 safe berth ODESSA. Owners to satisfy themeselves about the prevailing restrictions* ... and there load, always afloat from ashore and/or alongside other vessels and/or craft, as directed by Charterers or their designated representative at ... ~~berth(s) and/or at a safe anchorage~~, a ~~full and complete~~ *part* cargo of *3.500 metric tons hot rolled plates, 5 percent more or less, in Charterers' option. Partcargo in order - cargo under this Charter Party to be separated holdwise from other part cargo. In case same is not possible artificial separation to be arranged by Owners at their time/risk/expense.*

EXHIBIT
A
tabbies'

*Cargo to be loaded in lower holds only.*

**Port of Discharging**

Upon completion of loading the ship shall proceed at her normal service speed to *JEBEL ALI. Owners to satisfy themselves about the prevailing restrictions* and there deliver the cargo always afloat, ashore and/or alongside other vessels and/or craft, as directed by Charterers or their designated representative . ~~berth(s) and/or at a safe anchorage~~

After arrival written *or cable/ fax* notice is to be given at all ports to *Owners'* ~~Charterers'~~ agent there during the periods, ~~excluding holidays, Monday to Friday 9 a.m. to 5 p.m. (or local weekend equivalent periods)~~ of the vessel being in all ~~respects ready to load or to discharge~~. Prior to tendering Notice of Readiness the vessel's holds are to be washed, swept and clean to Shippers' satisfaction for the intended cargo to be loaded. *Vessel can only tender Notice of Readiness at loadport when all holds where cargo under this Charter Party will be loaded, are ready to receive the cargo, i.e. no restowage or other arrangements have to be done*. Unless otherwise provided for in this Charter Party the Master shall, upon giving Notice of Readiness, declare in writing the exact quantity of cargo he requires within the limits stipulated herein. In the absence of such a declaration on the part of the Master the Charterers shall be deemed to have fulfilled their obligations under this Charter Party if they load the minimum quantity stipulated in this Clause. *In the event of any dispute concerning cleanliness an independent surveyor is to be appointed and his decision to be final and binding on both parties. Cost of surveyor to be for the account of party proven to be in the wrong.*

**Freight**

3. Freight to be paid at and after the rate of *USS 53,00 per metric ton free lashed/secured/dunnaged - liner out* ________ ~~per ton of 1,016~~ Kilos delivered, in full of all port charges, pilotages, consulages, light dues, lighterage, and all other dues usually paid by Steamers, ~~Charterers to have the option to pay the freight on Bill of Lading weight less one percent in lieu of weighing, such option declarable before breaking bulk.~~

~~75 (seventy-five) per cent freight payable on Bill of Lading quantity within ..... banking days of receipt of telegraphic confirmation from Owners of signing and surrender of clean Bills of Lading, claused "Freight prepaid as per Charter Party", balance payable after completion of discharge and receipt by Charterers of all closing accounts, less amounts due under Clause 27 if any. Despatch (estimated or actual) and amounts due under Clause 22 if any are deductible from any payment of freight.~~ *100 percent freight, less commissions, to be paid into Owners' nominated bank account on signing clean Bills of Lading marked "freight prepaid". Bills of Lading only to be released upon receipt of freight.*

Freight is to be paid to the account of *Owners - to be nominated. Full freight deemed earned on signing Bills of Lading, discountless and non-returnable, vessel and/ or cargo lost or not lost.*

**Cash Advance**

4. Sufficient cash for Ship's disbursements to be advanced by Owners to Agents at ports of loading and discharging prior to vessel's arrival, failing which Charterers are not to be responsible for any delays to the vessel caused by Owners failure to place Agents in funds prior to ship's arrival. Charterers have the right to and may if agents request deduct loadport disbursements from advance freight and discharge port disbursements from the balance of freight adding five per cent to cover expenses. This right does not relieve Owners of their obligations herein described nor constitute any responsibility or liability on the part of the Charterers.

**Loading and Discharging**

5. The Cargo to be shipped ~~at the rate of~~ *basis C.Q.D. terms* ...... ~~Tons~~ and to be discharged ~~at the rate of~~ *basis liner out terms* .. ~~tons per clear weather working day of 24 consecutive hours, Sundays and Holidays always excepted. Time lost at any time by reason of all or any of the following causes shall not be computed in the loading or discharging time or as demurrage, viz.: War, Rebellion, Tumults, Civil Commotions, Insurrections, Political Disturbances, Epidemics, Quarantine, Riots, Strikes, Lock-outs, stoppage of Miners, Workmen, Lightermen, Tugboatmen, other essentials to the Working, Carriage, Delivery, Shipment or Discharge of the said Cargo whether partial or general, or Accidents and/or breakdowns at the Mines or Shippers or Receiver's Works or Wharf, Landslips, Floods, Frost or Snow, Bad Weather, Interruption of River and/or Canal Navigation, Intervention of~~ Sanitary, Customs, and/or ~~other constituted Authorities, Partial or Total Stoppage on Rivers, Canals or on Railways, or any other cause beyond control of Charterers. Calculation of time at each end shall be based on weight inserted in Bill of Lading and shall not be subject to adjustment with weight agreed for freight settlement. In case of deadfreight then the time allowed for loading and discharging shall be calculated on basis of tonnage for which freight is paid and not on the actual quantity loaded.~~

**Commencement of Laytime**

6. Time for loading to count from 8 a.m. on next working day after the Ship is reported and ready, and in free pratique and written notice tendered and accepted (whether in berth or not), and for discharging from 8 a.m. on next working day after ship is reported and in every respect ready, and in free pratique and written notice tendered and accepted (whether in berth or not). Steamer to be reported during office hours only. In case shippers/Charterers can arrange to load or discharge on Sundays (or local equivalent) or Holidays, or before time commences to count, Captain to allow work to be done, such time used is not to count. Time between 5 p.m. Friday and 8 a.m. Monday (or local equivalent weekend conditions) and between 5 p.m. day preceding a holiday and 8 a.m. next working day is not to count, even if used. It is understood that "holidays" includes local, and/or labour, and/or national, and/or public holidays.

**Winch Clause**

7. The ship to unload and/or load barges sent alongside with all possible despatch (should this mode of shipping be used), and any delay incurred by not doing so is not to count as part of laytime or demurrage. The ship to load and discharge as rapidly as possible, and give use of winches and motive power free of expense, and crew to drive the winches, if permitted by local labour regulations, otherwise shore hands to be employed, and Charterers to pay cost of same. The ship to keep the winches in good working order. Vessel shall keep all gear in good working order and shall also supply free of expense motive power, guymen, winches, derricks, gins, falls, runners, slings, and power to operate all usual deck appliances including lights whenever and wherever on board the vessel as required by Charterers for loading, trimming and discharging. Owners to provide deck hands to open and close hatches. Any time lost by reason of breakdown of winches and/or derricks to be recorded respectively per hatch on the sheet of the daily working report and not to count, pro rata, as laytime or demurrage. If owing to breakdown of vessel's winches and/or derricks shore appliances are employed then the cost of same to be for Owners' account.

Owners undertake that cargo gear and all other equipment shall conform with regulations at all ports visited by the vessel, and that the vessel is at all times in possession of valid certificates to comply with such regulations. If shore personnel are not permitted to work due to failure of the Owners to comply with the aforesaid regulations, or because of lack of said certificates, any time so lost shall not count as laytime or demurrage and all extra expenses incurred, directly resulting from such failure, shall be for Owners' account.

~~**Demurrage**~~

~~8. Demurrage (if any) at the rate of~~ ........................................ ~~per running day or pro rata~~ for part of a day to be paid to ~~Owners~~ Owners to pay Charterers despatch money at half ~~demurrage rate for all working time saved both ends. Demurrage/despatch to be settled after completion of the voyage and receipt of loading and/or discharging documents~~

9. ~~Laytime to be reversible at Charterers' option. Such option is declarable after receipt of Statement of Facts for all ports~~

**Laydays and Cancelling**

10. Laydays not to commence without Charterers' written consent before *28th August, 2006* ........................ and if any wilful misrepresentation be made in respect of the size, position, etc., or should the vessel not be in loading port ready to load latest *3rd September, 2006* ........................ it shall be at the option of the Charterers whether or not they will load the vessel. ***Such option to be declared latest 24 hours after vessel's arrival.***

**Bills of Lading**

11. The Captain to sign Bills of Lading at any Freight required by Charterers, not less than Chartered rate. Charterers have the right to sublet this Charter Party to others in full or in part, at any rate of freight without prejudice to this Charter, they remaining fully responsible for due fulfilment of same.

Should Bills of Lading not arrive at discharging port in time then Owners agree to release the entire cargo without presentation of the original Bills of Lading

**Agents**

12. ~~Charterers~~ *Owners* are to nominate and appoint the Vessel's agents at Port of Loading and Discharging. Owners paying customary Agency fee. ~~If proceeding to Turkey Owners to pay Agency and Supervision fees as per the official scale of charges laid down in Turkey~~. Agents at loading port will be ***nominated*** ........

Agents at discharging port will be ***nominated*** ........

**General Average**

13. General average shall be settled and adjusted according to York-Antwerp rules. ~~1974~~ *latest amendments*, at and as supplemented by custom and practice at the port of London. If required by Charterers, Owners will forego general average deposits from one or more cargoes and will accept a general average undertaking from Charterers in the customary form. If required by Charterers, Owners agree to release one or more cargoes to Charterers for transshipment from a port of refuge by and at the expense of Charterers, in exchange for a non-separation of interest agreement and a general average undertaking from Charterers in the customary form. The transshipment expenses shall not be included in the general average except to the extent of the other general average expenses thereby saved.

14. Master to telegraph ~~"Charterers,"~~ *STEHN & CO, HAMBURG, Fax: +494051477999, E-MAIL: STEHNCO-HAMBURG@SHIPNET.DE* as well as Charterer's agents at Port of Loading, should he have to put in at any Port or Ports.

15. In case of Jettison, the Captain to report the same to Receivers and "*STEHN & CO, HAMBURG, Fax: +494051477999, E- MAIL: STEHNCO-HAMBURG@SHIPNET.DE*" immediately.

**Overtime**

16. The ship to work at night if requested to do so. Overtime to be for account of party ordering same, but if ordered by Port Authorities ~~50 per cent shall be paid by Charterers and 50 per cent by the Owners. Overtime earned by the Officers and Crew~~ shall ~~always be entirely for Owner~~ *same to be for Shippers' /Receivers'* account.

17. Shippers/Charterers/~~Receivers~~ to put the cargo on board~~, trim and discharge cargo free of expense to the vessel. Trimming is understood to mean levelling off the top of the pile and any additional trimming required by Master is to be for Owners' account.~~

**Commission**

18. *An address* Commission of *1,25* ........ per cent on the gross amount of freight, dead freight, and demurrage is due on shipment, ship and/or cargo lost or not lost to ................ Commission, due to ................ on freight is deductable from advance freight payment and commission due to ................ on deadfreight and/or demurrage, if any, is deductable from balance of freight.

**Notices**

19. Ship to apply to *Agents as per Clause 12.* ................ for cargo.

Owners or Master to give to loading port agents *3/ 2/ 1* ................

days notice of vessel's expected date and time of arrival together with approximate quantity of cargo required on giving the ................ days notice.

Master also to give to discharging port agents ................

days notice of expected date and time of arrival at discharging port. Upon sailing from the loading port Master will cable "*STEHN & CO, HAMBURG, Fax: +494051477999, E-MAIL: STEHNCO-HAMBURG@SHIPNET.DE*" stating the exact quantity of cargo loaded and his E.T.A. at discharging port. ~~In the event of Owners or Master failing to~~ give ~~the aforementioned notices, Charterers are~~ to ~~be allowed 24 hours extra laytime for loading or discharging.~~

20. The Act of God, the Queen's enemies, Arrest and/or Restraints of Rulers, Princes and People, Quarantine, Fire on Board, in Hulk or Craft or on Shore, Ice, Barratry of the Master and Crew, Enemies, Pirates, Robbers by land or sea, accidents to and damage and detention from Boilers, and of Machinery, Collisions, Stranding, Jettison, or from any act, neglect, default or error in judgment whatsoever of the Pilot, Master, Crew or other servants of the Shipowners in the management and/or the navigation of the vessel, and all and every other Dangers and Accidents of the Seas, Rivers and Canals of whatever nature and kind whatsoever, before and during the said voyage always mutually excepted. Vessel has liberty to call at any port or ports, in any order, or places, to bunker, or to deviate for the purpose of saving life or property, with leave to sail without Pilots, and tow or to be towed and assist vessels or to be assisted in all situations whatsoever. Salvage and/or towage for Owner's sole benefit.

21. All liability of Charterer shall cease on completion of loading except Charterers to remain responsible for payment of freight, ~~deadfreight and demurrage if any. Deadfreight/demurrage to be settled after completion of the voyage and receipt of loadin and/or discharging documents.~~

**Insurance**

22. Any extra insurance premium on cargo on account of vessel's age~~, flag, class or ownership~~ to be for ~~Owners'~~ *Charterers'* account.

**Bad Weather**

23 The Captain shall ~~cover~~ *close* the hatch of each hold as soon as the loading into same has finished, and also all hatches when the loading or discharging has finished for the day. If the weather be wet or threatening, he shall also, during rain or snow, ~~cover~~ *close* up all hatches by which loading or discharging is not actually going on. It is agreed that the Captain may send someone to check the weight of the cargo on delivery so as to avoid dispute, and weight as ascertained to be conclusive.

24 ~~Owners accept the risk of detention which may arise if by reason of insufficient depth of water the vessel cannot get to a usual loading and/or discharging berth as ordered, when same available.~~

25 If through congestion at the Port of Discharge vessel is kept waiting off the port lay days are to commence to count as per Clause 6, but not until 36 hours from arrival (Sundays, or local equivalent and holidays excepted).

26 In the event of any general strike, riot, insurrection, revolution or war, which may prevent the Shipment of cargo under this Charter, the Owners in the event of no cargo having been loaded, have the option of cancelling this Charter or if any cargo has been loaded they have the right to proceed on the voyage with the cargo so loaded. In the latter case the time to count as lay days to be mutually agreed between Owners and Charterers.

~~**Grab Discharge**~~

~~27 Vessel is guaranteed suitable for grab discharge and is to tender clear of sweat battens. No cargo is to be loaded in deeptanks, bunkers or other compartments not easily accessible to grabs. If the cargo is loaded and trimmed in tweendecks any extra expenses incurred at loading port and time lost to be for ship's account also any extra~~ trimming necessary on account of vessel's construction ~~to be for Owners' account and time so occupied to be for Owners' account. Any extra expenses and/or loss of time over and above the cost of normal grab discharge incurred at discharging port for cargo not easily accessible to grabs or loaded in the tweendecks is to be for Owners' account also~~ any extra expenses incurred solely owing to vessel's ~~construction and amounts involved may be deducted from the balance of freight pending final adjustments. All extra time lost under this Clause to be added to the laytime. Deeptanks, tunnels and all other provisions within vessel's~~ holds ~~are to be sheltered against damage by Receivers' grabs. Tailing which Owners are to be responsible for all consequences. Any~~ disputes ~~regarding stevedoring damage to be settled directly between Owners and Stevedores and any time occupied in repairing Stevedoring damage not to count as laytime.~~

~~**Arbitration**~~

~~28 All disputes from time to time arising out of this Contract shall, unless the parties agree forthwith on a single~~ Arbitrator, ~~be referred to the final arbitrament of two Arbitrators carrying on business in London who shall be members of the Baltic Exchange and engaged~~ in ~~the shipping and/or grain trades, one to be~~ appointed ~~by each of the parties with power to such Arbitrators to appoint an Umpire. Any claim must be made in writing and Claimant's Arbitrator appointed within twelve months of final discharge and where this provision is not complied with the claim shall be deemed to be waived and absolutely barred. No award shall be questioned or invalidated on the~~ ground that any of the Arbitrators ~~is not qualified as above~~, unless objection to his ~~acting be taken before the award is made~~.

**Protective Clauses**

29. New Jason Clause, Both-to-Blame Collision Clause, P & I Club Oil Bunkering Clause and Chamber of Shipping War Risks Clauses 1 and 2 are to be deemed incorporated in this Charter Party ***and in any Bills of Lading issued hereunder.***

30 The Pilot, Master, Officers and Crew of the vessel, and any tow boat person or facility assisting the vessel, shall not be agents or employees of Charterers and the Charterers shall not be liable for any loss, damage or claims resulting from or arising out of negligence or error of any of them while vessel is proceeding to or lying at any place of loading and/or dicharging

31 While the Surveyor is taking draft readings and/or tank soundings, Master is not to take on or pump ballast at load and discharge ports without obtaining permission of the Charterers, and vessel is not to take on, release or switch from one tank or other compartments to another any ballast, fresh water or fuel oil.

32 Vessel to furnish a certified calibration scale for all tanks including fore and aft peaks and double bottom tanks and deeptanks. Plimsoll marks amidships and draft marks on port and starboard sides bow and stern to be clearly cut and marked on shell plating. Vessel to furnish capacity plan, displacement scale and deadweight scale and same to be certified by the Master as to correctness at time of loading.

33 ~~When loading Pig Iron and/or scrap Charterers have the right to dump the cargo~~ after ~~safe flooring secured. Stowage to be under the direction of the Master.~~

34 ~~Magnet loading and/or discharging is permitted and the Vessel is to provide~~ all power ~~required by Shippers and/or Receivers and/or Charterers~~

35 ~~Owners warrant that vessel has not called at Cuba or North Vietnam since~~ 1st January, ~~1962~~

36 ~~If vessel calls at any U.S. port for purposes of loading and/or discharging and/or embarking or disembarking passengers, vessel's cargo gear and all other equipment must comply with regulations established by U.S. Public Law 85-742 Part 9 (Safety and Health Regulations of Longshoring). If longshoremen are not permitted~~

~~in work due to failure of Master and/or Owners' Agents to comply with the aforementioned regulations, any delays resulting therefrom shall be for Owners' account.~~

~~37. Owners warrant that they have secured and carry aboard the vessel a U.S. Federal Maritime Commission's Certificate of Financial Responsibility as required under the U.S. Water Quality Improvement Act of 1970. In any case Owners shall be liable for any and all consequences arising from their failure to obtain the aforementioned certificate.~~

~~38. If vessel is required to shift between berths at either loading port or discharging port time is not to count as laytime and shifting expenses are to be for Owners' account.~~

39. Owners warrant that the vessel will not be scheduled for breakup upon completion of this Charter. Charterers are granted a maritime lien on the vessel and are entitled to deduct from any sums due to Owners for all damages arising from a breach of this warranty.

40. *First* Opening and *first* closing of hatches to be for Owners' account *provided permitted by local regulations*

**Part Cargo Clause**

41. In the event of a part cargo option being agreed during negotiations the following conditions are deemed to have been accepted by Owners.

(a) Owners have the option to complete with other lawful general merchandise at their risk and expense from a port en route to a port en route. Any such completion cargo is to be non injurious to cargo carried under this Charter party. and ~~is not to be loaded in same compartments as cargo loaded under this Charter Party~~. *Completion cargo can be loaded in same compartments as cargo under this Charter Party, but any artificial separation between completion cargo and cargo under this Charter Party to be at Owners' time/ risk/ expense* If such completion cargo is in bulk then this is not to be stowed in tweendecks above cargo loaded under this Charter Party, and if such completion cargo is in bags or casks or drums i.e., not bulk and same is carried in tweendecks then the tweendeck hatch covers are to be securely covered by tarpaulins to avoid seepage of cargo into lower holds. At all times Owners are to be fully responsible for any contamination of cargo loaded under this Charter Party due to completion cargo being carried. Such completion cargo is not to be loaded or discharged at same time as cargo carried under this Charter Party.

(b) ~~At loading port letter of readiness is not to be presented (or accepted) until all compartments into which cargo will be loaded under this Charter Party are actually free and unimpededly available. At discharging port letter of readiness is not to be presented (or accepted) until any cargo over stowing or otherwise impeding discharge of cargo under this Charter Party has been discharged or otherwise removed.~~

(c) ~~If other cargo is to be loaded and/or discharged at same berth or by means of same shore loading or discharging equipment prior to the cargo under this Charter Party then the notice of readiness under this Charter Party can only be tendered (or accepted) when such other cargo has been finally loaded and/or discharged~~

~~**Bagged Cargoes**~~

~~42. In the event of bagged cargo being carried the following conditions are deemed to have been accepted by Owners.~~

~~(a) Owners to take adequate precautions in order to protect bagged cargo from damage. If the vessel is not cargo batten fitted Owners to supply and lay at their expense any dunnage and mats and kraft paper necessary to ensure adequate protection of cargo. In any case it is understood that dunnage and/or mats and/or kraft paper must be sufficient to avoid any contact of the bags with plates, frames and beams so as to allow ventilation on the sides and to avoid hold moisture and to avoid bags becoming torn. Before tendering Notice of Readiness Master to take necessary measures to ensure holds are clean, dry and odour free and in every way suitable to receive cargo to Charterers' surveyors satisfaction.~~

~~(b) Owners to be responsible for number and condition of bags signed for in accordance with the Bills of Lading.~~

~~(c) If the cargo is stowed in refrigerator hatches, alleyways, bunker hatches, deeptanks or other awkward places, owners shall pay the extra labour costs of loading and/or discharging from such places and shall allow Charterers additional laytime for such loading and/or discharging.~~

~~(d) Clean Mates Receipts to be signed for each parcel when on board, and Master to sign Bills of Lading in accordance therewith as requested by Charterers or Shippers. Master's right to reject any cargo that would involve the clausing of Mates Receipts and/or Bills of Lading~~

NOTICE

SERIOUS LOSSES have recently been caused to Charterers by Captains signing Bills of Lading for a greater quantity than they knew to have been loaded. OWNERS ARE REQUESTED to assist Charterers by warning the Captain not to sign Bills of Lading for more than [illegible] Captain believes to be on board his vessel. THE CAPTAIN should carefully calculate from ship's displacement the weight of cargo and make sufficient allowance for weight of bunker coal, water, stores &c. OWNERS ARE PAID freight on output weight and where Captains sign for an excessive quantity, dues paid by the vessel on such excess are not recoverable.

A true copy of original Charter [illegible] possession

This document is a computer generated STEMMOR 83 form printed using software which is the copyright of Strategic Software Ltd (SSL). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the preprinted text of this document and which is not clearly visible, then the original STEMMOR 83 approved document shall apply. SSL assume no responsibility for any loss or damage caused as a result of discrepancies between the original document and this document.

*Additional Clauses Nos. 42 to 54, as per attached Rider, are deemed fully incorporated in this Charter Party and form part of same.*

*THE OWNERS* *THE CHARTERERS*

Stehn & Co.
Tel.: 514 77 - 7
Fax: 514 77 999
e-mail: stehnco-hamburg@shipnet.de
Stodersweg 3, 20148 Hamburg

MV "CHANG LE MEN"

CHARTER PARTY DATED HAMBURG, 24th AUGUST, 2006

==========================================

Clause 42
Any taxes/dues/wharfages on vessel/freight to be for Owners' account.
Any taxes/dues/wharfages on cargo to be for Charterers' account.

Clause 43 - Vessel's Description
MV. CHANG LE MEN
ST. VINCENT FLAG BUILT 1982.09
LOA/LBP/BM/DEPTH 147.40/137.4/23.00/13.15M
17,240MT DWT ON 9.778M SWW
GRT/NRT 11,175/6970
4H/4H MULTI TWEEN DECK GENERAL CARGO VSSEL
GRAIN/BALE CAPACITY 23,188/21,251 CBM
DERRICKS 5 X 25MT (OUT REACH: NO.1/2 6.0M NO.3/4/5 8.4M)
TROPICAL DWT 17,805MT ON 9.981M
WINTER DWT 16,675MT ON 9.575M
SUEZ GRT/NRT 11,392.85/9,459.41
PANAMA GRT/NRT 11,950/9,428
TYPE H.COVER: M.DECK/SINGLE PULL, T.DECK/FOLDING
GRN/BAL CAPA HOLDWISE BREAKDOWN
HOLD NO. GRAIN CUBICS (TWEEN/HOLD) BALE CUBICS (TWEEN/HOLD)
NO.1 1,650/1,364 1,525/1,178
NO.2 2,115/3,495 1,984/3,126
NO.3 3,880/5,325 3,619/4,890
NO.4 2,134/3,225 2,013/2,916
TTL 9,779/13,409 9,141/12,110
TTL GRAIN/23,188CBM, BALE/21,251CBM
HATCH SIZE WD/TD (M)
NO.1 12.80 X 7.80 / 12.80 X 7.80
NO.2 12.60 X 13.10 / 12.60 X 13.10
NO.3 25.60 X 13.10 / 25.60 X 13.10
NO.4 12.80 X 13.10 / 12.80 X 13.10
H.DIMENSIONS(L X B X H) LOW HOLD TWEEN DECK
NO.1 19.20 X 5.10/16.40 X 5.00 19.20 X 6.5/20.80 X 4.00
NO.2 19.80 X 12.00/21.40 X 7.20 20.80 X 22.50/20.80 X 3.50
NO.3 35.60 X 18.20/18.20 X 7.20 36.20 X 22.50/22.50 X 3.80
NO.4 18.20 X 21.40/13.60 X 7.20 20.00 X 22.50/22.50 X 3.60
TANK TOP STRENGTH: NO.1-11.34MT/M2 ,NO.2/3/4 -13.09MT/M2
H.COVER STRENGTH: M.DECK- 1.72MT/M2, T.DECK-2.60MT/M2
DECK STRENGTH: M.DECK -1.42MT/M2 ,T.DECK- 2.65MT/M2
WLTHC IN BALLAST CONDITION: NO.1-12.5M , NO.4- 9.6M
W/L TOPMAST IN BALLAST CONDITION: 36.5M
(LIGHTSHIP/BALLAST WATER ONLY)
DWT ON 31FT(9.448M) SSW 16,300MT
30FT(9.144M) 15,500MT
29FT(8.839M) 14,600MT
28FT(8.534M) 13,800MT

TPC:27.88 (LADEN)
VENTILATION:ELECTRIC (5 AIR CHANGES PER HR)
STEEL BOTTOM
WING/SHOULDER TANK
$CO_2$ FITTED
ALL DETAILS ABOUT AND WOG
OR SIMILAR SUBSTITUTE AT COSMOTRADE OPTION

IF OWNERS NOMINATE A SIMILAR SUBSTITUTE, CHRTS NEED 1 WORKING DAY TO GET RECONFIRMATION FROM SHIPPERS/RECEIVERS FOR THIS NEW NOMINATION

Performing vessel to have

engine/bridge aft
steelfloored throughout all holds
tonnage to be without centreline bulkhead or beam, having clear/ unobstructed holds without any container-fittings or similar in her holds
vessel has no twin-hatches neither pontoon-hatchcovers
vessel has no fixed stanchions on deck
classed highest Lloyd's or equivalent and to be so maintained throughout this Charter Party.
fully P&I insured and to be so maintained throughout this Charter Party.
Owners warrant that the vessel is suitable in every respect for the carriage of bulk steels. Before tendering notice of readiness at loading port, cargo compartments to be clean, completely dry and in good condition and in every respect ready to load bulk steels to Shippers'/ Charterers' surveyor's satisfaction. In case of dispute between Shippers/ Charterers and Owners concerning vessel's cleanliness, an independent surveyor to inspect the vessel's holds and his decision to be binding upon both parties. Cost of same to be paid by party at fault.

Vessel to be I.S.M. and I.S.P.S. compliant and to be in possession of a valid International Ship Security Certificate (ISSC) or their Interim International Ship Security Sertificate (IISSC), copy of which to be mailed to Charterers together with the names of the last 10 ports of call, last 3 cargoes, copy of valid ism certificate Prior to application for subjects as above, Owners also to fill in the loadport questionnaire, which is constituting part of a valid nomination.

Clause 44
All disputes arising out of this Charter Party which cannot be amicably resolved shall be referred to arbitration in London. Unless the Parties agree on a sole arbitrator, the reference shall be for a tribunal of two arbitrators, one to be appointed by each of the parties who will have power to appoint an umpire if they disagree. The arbitrators and the umpire shall be members of the London Maritime Arbitrators Association current at the time when the arbitration proceedings are commenced. English Law to apply. York-Antwerp Rules latest amendments to apply. BIMCO Arbitration Clause to apply.

Clause 45
If "Freight Prepaid" Bills of Lading are to be issued by Charterers, then same may be prepared, but authority to sign and release same will not be given until Owners' bank receive irrevocable confirmation of freight payment from Charterers' bank.

Clause 46
Detention at loading port US$ 13.000,-- per day/ pro rata for non readiness of cargo/ cargo documents.

Clause 47
BIMCO Lien Clause to be incorporated in this Charter Party.
The Owners shall have a lien on the cargo and on all sub-freights payable in respect of the cargo, for freight, deadfreight, demurrage, claims for damages and for all other amounts due under this Charter Party including costs of recovering same.

Clause 48
BIMCO ISPS Clause as attached to apply.
BIMCO I.S.M. Clause to apply.

Clause 49
Shore Tally at both ends to be for Charterers' account.

Clause 50
In the event of a boycott arising due to vessel's flag, time lost through such cause not to count as laytime or as time on demurrage. This clause shall also be applicable in the event of labour boycott or any discrimination against the vessel because of her registry and/or crew and/or terms on which the crew is employed.

Clause 51
Deleted

Clause 52
Master/ Owners to be responsible for number of pieces/ bundles/ packages taken on board, to sign daily Mate's Receipt, if required, and to state number of pieces/ bundles/ packages in the Bills of Lading. Hague Visby Rules to apply.
Tally Sheets to be given to Owners/ Master.

Clause 53
Bill of Lading weight to be determined by Mill Certificate or shore figure in Charterers' option.

Clause 54
Stevedore damage at load/discharge port to be settled directly between Owners and Stevedores without any responsibility for Charterers, but Charterers will try best to assist Owners in case of a possible claim with stevedores.

**********************

BIMCO ISPS CLAUSE

ISPS Clause

(A)(i) From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the Vessel, the Owners shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the Vessel and "the Company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to the Charterers.
The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.

(B)(i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and any other information the Owners require to comply with the ISPS Code.

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account and any delay caused by such failure shall be compensated at the demurrage rate.

(C) Provided that the delay is not caused by the Owners' failure to comply with their obligations under the ISPS Code, the following shall apply:

(i) Notwithstanding anything to the contrary provided in this Charter Party, the Vessel shall be entitled to tender Notice of Readiness even if not cleared due to applicable security regulations or measures imposed by a port facility or any relevant authority under the ISPS Code.

(ii) Any delay resulting from measures imposed by a port facility or by any relevant authority under the ISPS Code shall count as laytime or time on demurrage if the Vessel is on laytime or demurrage. If the delay occurs before laytime has started or after laytime or time on demurrage

has ceased to count, it shall be compensated by the Charterers at the demurrage rate.

(D) Notwithstanding anything to the contrary provided in this Charter Party, any additional costs or expenses whatsoever solely arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account

(E) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

**********************************

545-07PJG/PLS

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Peter J. Gutowski (PG 2200)
Pamela L. Schultz (PS 8675)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

COSMOTRADE EXPORT S.A.,

Plaintiff,

-against-

GABRO INTERNATIONAL AG,

Defendant.

-----------------------------------------------------------x

07 CV

**RULE 7.1 STATEMENT**

The Plaintiff, COSMOTRADE EXPORT S.A., by and through its undersigned attorneys Freehill Hogan & Mahar, LLP, and pursuant to Federal Rule of Civil Procedure (formerly Local General 1.9) and to enable District Judges and Magistrate Judges of the Court to evaluate possible disqualification or recusal, the undersigned counsel for COSMOTRADE EXPORT SA (a private non-governmental party) certifies that there are no corporate parents, affiliates and/or subsidiaries of said party which are publicly held.

Dated: New York, New York
November 6, 2007

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
COSMOTRADE EXPORTS S.A.,

By: ______________________________
Peter J. Gutowski (PG 2200)
Pamela L. Schultz (PS 8675)
80 Pine Street
New York, NY 10005
Telephone: (212) 425-1900
Facsimile: (212) 425-1901